IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Tonka M. Crosby, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. 08-1506 |
| State Correctional Institute Greensburg, | ) |
| Defendant. | ) |

AMBROSE, District Judge

# OPINION AND ORDER OF COURT

Plaintiff, Tonka Crosby ("Plaintiff"), initiated this action against Defendant State Correctional Institute Greensburg ("Defendant" or "SCI Greensburg"), alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and a pendent state claim under the Pennsylvania Human Relations Act, 43 Pa. Stat. § 951, *et seq.* ("PHRA").

Pending before the Court are Plaintiff's Motion for Summary Judgment (Docket No. 28) seeking the entry of judgment in her favor as to her *prima facie* claim of retaliation, and Defendant's Motion for Summary Judgment (Docket No. 25) seeking dismissal of Plaintiff's claims in their entirety. After careful consideration of the parties' submissions and for the reasons set forth below, both motions are denied.

## I. BACKGROUND

### A. Factual Background

Unless otherwise indicated, the following material facts are undisputed.

Plaintiff began her employment with SCI Greensburg as a Corrections Officer Trainee on

or about April 30, 2001. Approximately one year later, she was promoted to Corrections Officer 1. Plaintiff is currently employed as a Corrections Officer 1.

On or about July 28, 2004, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment and retaliation stemming from a December 2003 incident in which another Corrections Officer, Jeff Porch, allegedly slapped Plaintiff on her buttock. (Docket No. 31-6). In 2005, Plaintiff filed a Complaint in this Court as a consequence of the alleged incident with Officer Porch and other alleged instances of harassment and a hostile work environment. (Docket No. 31-1). In February and March 2006, the parties filed a Stipulation for Dismissal of the 2005 lawsuit after reaching a settlement in the case. (Docket No. 31-8).

Plaintiff filed another Charge of Discrimination with the EEOC on December 3, 2007, alleging, *inter alia*, that she was being retaliated against because of her prior EEOC filing. (Docket No. 31-8). In her Complaint in this lawsuit, Plaintiff likewise purports to raise claims for harassment in retaliation for her July 2004 EEOC filing. Among other things, Plaintiff's Complaint addresses discipline she received as a result of an altercation with another corrections officer on November 11, 2006 and the service upon her of a notice of a pre-disciplinary conference ("PDC")[1] on October 1, 2007. The Complaint also alleges that Plaintiff was subjected to terms and conditions of employment to which other similarly situated employees were not, including: interception of misconducts; completion and/or modification and/or signing of paperwork not required of others; being disciplined for being out of uniform by not wearing a hat; and leave abuse. (Docket No. 1).

**1. November 11, 2006 Incident**

On November 11, 2006, Plaintiff and another female corrections officer, Officer Baskin, were assigned to work in the visiting room at SCI Greensburg. While working in the visiting room,

---

[1] A PDC is a Pre-Disciplinary Conference for employees whose actions may warrant disciplinary action. The provisions of SCI-Greensburg's Human Relations Procedure Manual govern the service of a PDC.

Plaintiff and Baskin engaged in a verbal confrontation. The Security Department staff began a fact finding investigation into the incident. One of the officers involved in the investigation states that the Security Department Staff, specifically Captain Richard Bell, attempted to have an inmate change his version of events to implicate Plaintiff. See Docket No. 31-23.

A PDC was held, after which Plaintiff was issued a written reprimand, which she grieved, and which was modified to a verbal reprimand after six months, to be removed from her file one year from the date of issuance, provided there were no intervening incidents of a similar nature.[2] Michael Miteff – then a Corrections Officer 1 at SCI-Greensburg who represented Plaintiff on a number of occasions in his capacity as Union Steward – states in an affidavit that after the PDC, Captain Bell said to him "You fucked me, I could have fired her." (Docket No. 31-4).

**2. October 1, 2007 Incident**

On October 1, 2007, Plaintiff was on security duty at Shadyside Hospital guarding an inmate who was a patient there. On that date, Lieutenant Berberick arrived and advised her that he needed to see her in the hall and that he was ordered to serve her with PDC paperwork. Plaintiff claims that Berberick raised his voice and argued with her about her cell phone and that Plaintiff and the inmate were upset and embarrassed.[3] Berberick admits that Plaintiff was upset about receiving the PDC notice. Plaintiff also contends that there is no policy providing for service of a

---

[2] Officer Baskin also received a written reprimand and grieved her discipline. Officer Baskin's discipline was reduced to a verbal reprimand to be removed from her personnel file as having served its purpose.

[3] Defendant disputes Plaintiff's version of the events at Shadyside Hospital concerning the service of the PDC notice. For example, Berberick testified that he spoke to Plaintiff privately and quietly about the PDC paperwork outside of the hospital room and disputes that the two had a verbal confrontation in front of the inmate Plaintiff was guarding. See Def.'s Resp. to Pl.'s Statement of Material Facts (Docket No. 39) ¶¶ 42-54; Docket No. 31- 3, at 9-11. In its response to Plaintiff's Statement of Material Facts, Defendant characterizes many of Plaintiff's assertions on this issue as "disputed" and "material." See e.g., Def.'s Resp. to Pl.'s Statement of Material Facts ¶¶ 42, 49-50.

3

PDC notice outside of the SCI-Greensburg facility[4] and points to Berberick's testimony that Plaintiff's PDC notice was the only one during his thirteen-year career that he had served outside the prison facility. (Docket No. 31-3, at 11-12).

The PDC at issue concerned comments that Plaintiff allegedly made to another SCI Greensburg employee on September 10 and 17, 2007. The PDC took place on October 3, 2007. On November 3, 2007, Plaintiff called off work and advised the individual to whom she spoke, Lieutenant Kuhn, that she was calling off due to work-related stress. Plaintiff contends she called off as a result of the manner in which she had been served with the PDC paperwork. On November 19, 2007, Licensed Clinical Social Worker Stephen Brunetti diagnosed Plaintiff as suffering from Adjustment Disorder with Mixed Anxiety and Depressed Mood and stated in his report that "Tonka notes employment stressors are the primary source of her symptoms." (Docket No. 31-13).[5]

Plaintiff also filed a workers' compensation claim alleging that she suffered a work-related stress injury as of November 3, 2007 due, at least in part, to the service of the PDC notice on October 1, 2007. Plaintiff was not provided with paperwork to be completed for her workers' compensation claim until 35 days after her first day off from work. Plaintiff's workers' compensation claim was denied. According to Soltis, the claim was denied because Plaintiff did not provide sufficient information.

Plaintiff contends that she intended to return to work on January 2, 2008, but was unable

---

[4] Defendant disputes this contention, citing the testimony of Joseph Soltis – then Director of Human Resources at SCI-Greensburg – that service of the PDC notice upon Plaintiff while on duty at the hospital was not abnormal and that service of a PDC notice depends on the timeframe of the conference, as a party must be in possession of the notice 48 hours before the PDC commences, which in this case was October 3, 2007. Def.'s Resp. to Pl.'s Stat. of Mat. Facts ¶ 28. Defendant characterizes this factual dispute as material. Id.

[5] Defendant admits Brunetti's diagnosis but disputes that Brunetti was qualified to make it. Def.'s Resp. to Pl.'s Stat. of Mat. Facts ¶¶ 61-62. Defendant characterizes these facts as material.

4

to do so because of her anxiety. Plaintiff did return to work on her next scheduled day. Plaintiff used up all of her leave during her time off from work.

### 3. Other Alleged Retaliation

Plaintiff also alleges that she was harassed and otherwise subjected to terms and conditions of employment to which other similarly situated employees were not subjected. For example, Plaintiff contends that, on several occasions, Captain Bell intercepted misconduct reports that Plaintiff submitted against inmates and that the charges Plaintiff submitted against those inmates were subsequently dropped or reduced.[6] Plaintiff claims that consequently, she became regarded as an officer who fabricated reports, thereby damaging her credibility. Plaintiff further alleges that she was forced to sign and modify documents and complete paperwork not required of other officers.

Plaintiff also contends that on October 21, 2007, Acting Shift Commander Lieutenant Reed called her and informed her that she was on her post without a hat and was out of uniform for the day. Plaintiff states that no other corrections officers were wearing a hat in the yard, but no other officers were disciplined. Reed subsequently ordered hats for Plaintiff without her knowledge.

In addition, Plaintiff has been subject to discipline after her return to work in 2008 when she took time off and had no leave. For example, Plaintiff states that on July 16, 2008, she scheduled a doctor's appointment and that on July 21, 2008, Lieutenant Roberson advised her that Soltis was requesting a fact-finding on leave abuse, even though she never had been verbally counseled or disciplined in any way for leave abuse. Plaintiff was charged with 1.52 hours of absent without approved leave for her July 16, 2008 absence and, *inter alia*, received a verbal reprimand and was placed on leave restriction. Plaintiff filed a grievance after which the verbal reprimand was reduced

---

[6] As an example, Plaintiff cites to a misconduct report she completed regarding an alleged fight between inmates, after which Bell assumed the investigation and dismissed the charges as "horseplay." Pl.'s Stat. Mat. Facts ¶ 123.

to an official counseling session and the leave restriction was lifted. The 1.52 hours of absent without leave charge remained. On two occasions after Plaintiff returned to work, her requests for compensatory time off were denied.[7] According to Soltis, these requests were denied because Plaintiff did not have a leave balance. In Soltis's opinion, Plaintiff had abused her leave. Plaintiff also contends that her lack of leave days adversely impacted her opportunity for promotion. As an example, Plaintiff states that she applied unsuccessfully for a position in the K-9 unit after her return from leave while her discipline was still in her file.

Finally, Plaintiff contends that, on several occasions, Bell and/or Soltis made unwarranted comments about her and the performance of her duties to Officer Mitteff. For example, in addition to the negative comments that Bell allegedly made after the 2006 PDC, Mitteff avers that Soltis approached him on January 23, 2008 – the date of Mitteff's retirement – and commented as follows: "Are you sure you don't want to stay for the 'Labor/Management' meeting today? We will be hearing Officer Crosby's grievance for discipline today. She doesn't think she deserved discipline. How dare I give her discipline?" (Docket Nos. 31-4, 31-5, 31-23).

### B. Procedural History

For purposes of ruling upon the pending Motion, the following procedural history is relevant.

After exhausting her administrative remedies with respect to her retaliation claim, Plaintiff filed a Complaint against Defendant on October 27, 2008. (Docket No. 1). Defendant answered Plaintiff's Complaint on March 11, 2009. (Docket No. 11). On January 4, 2010, Defendant filed its Motion for Summary Judgment on the merits, Brief in Support, Concise Statement of Material Facts, and supporting materials. (Docket Nos. 25-27). On February 19, 2010, Plaintiff filed a Brief and Counterstatement of Material Facts in opposition to Defendant's Motion. (Docket Nos. 37-38). On January 6, 2010, Plaintiff filed her Motion for Summary Judgment, Brief in Support, Concise

---

[7] If a Corrections Officer is working overtime and makes a request, he or she can be granted compensatory time if the union, management, and the employee all agree.

Statement of Material Facts, and Appendix. (Docket Nos. 28-31). Defendant filed a Brief in Opposition and Response to Plaintiff's Concise Statement of Material Facts on February 19, 2010. (Docket Nos. 39-40). Neither party filed a reply brief. Both motions are now ripe for my review.

## II. LEGAL ANALYSIS

### A. Standard of Review

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 896 (3d Cir. 1987). The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex, 477 U.S. at 322. Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of

affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324. Summary judgment must therefore be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988) (quoting Celotex, 477 U.S. at 322).

### B. Defendant's Motion for Summary Judgment

#### 1. Sexual Harassment

As an initial matter, Defendant argues that I must dismiss Plaintiff's Complaint to the extent it sets forth claims for sexual or sex-based harassment as opposed to retaliation. Specifically, Defendant contends that Plaintiff's December 3, 2007 EEOC charge does not allege sexual or sex-based harassment and, therefore, Plaintiff failed to exhaust her administrative remedies with respect to any such claims. In her brief in opposition, Plaintiff concedes that she is not making an independent gender-based discrimination claim. Rather, her allegations of hostile work environment and harassment are "merely the 'adverse action by the employer' element required to prove a case of retaliation." Pl.'s Br. Opp. (Docket No. 37) at 3; see also id. at 4 ("Ms. Crosby has raised a claim of retaliation only."). Because Plaintiff does not purport to assert a separate sexual or sex-based harassment claim, Defendant's motion for summary judgment as to any such claim is denied as moot.

#### 2. Retaliation - Title VII and PHRA[8]

Section 704(1) of Title VII forbids an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an

---

[8] My analysis of Plaintiff's Title VII claims applies equally to her retaliation claims under the PHRA. Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996).

investigation . . . under this subchapter." 42 U.S.C. § 2000e-3(a); see also 43 Pa. Stat. § 955(d) (prohibiting retaliation against an employee for making a charge under or opposing any practice forbidden by the PHRA).

In the absence of direct evidence, retaliation claims proceed under the familiar burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1983). See Hare v. Potter, 220 F. App'x 120, 127 (3d Cir. 2007) (citing Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006)). Under the McDonnell Douglas burden-shifting analysis, a plaintiff must first establish a *prima facie* case of retaliation. See Hare, 220 F. App'x at 127. If the plaintiff succeeds, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for its actions. Id. If the defendant meets this relatively light burden, the presumption of retaliation drops from the case and the plaintiff must then proffer evidence sufficient to allow a reasonable fact finder to find by a preponderance of the evidence that the employer's proffered reasons are a pretext for retaliation. Id. Specifically, to survive a summary judgment motion, the plaintiff "must 'point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006) (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)); Hare, 220 F. App'x at 127. In the end, the burden of proof remains with the plaintiff. See Woodson v. Scott Paper Co., 109 F.3d 913, 920 n.2 (3d Cir. 1997).

Here, Defendant seeks dismissal of Plaintiff's retaliation claims in their entirety on the grounds that (1) Plaintiff cannot establish a *prima facie* case of retaliation and/or (2) Defendant has articulated legitimate, nondiscriminatory reasons for its actions and Plaintiff cannot show that those reasons were pretextual. I address each of these arguments in turn.

    a.    ***Prima Facie* Case**

To establish a *prima facie* case of retaliation, Plaintiff must show that: (1) she engaged in a protected activity under Title VII; (2) her employer took a "materially adverse" action against her after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action. Andreoli v. Gates, 482 F.3d 641, 649 (3d Cir. 2007); Moore, 461 F.3d at 340-41; Hare, 220 F. App'x at 127. Defendant concedes that Plaintiff engaged in protected activity under prong one of this test when she filed her 2004 EEOC charge, but argues that Plaintiff cannot satisfy prongs two and three, *i.e.*, that Defendant took a materially adverse employment action against her or that a causal connection exists between the protected activity and any such action. Viewing the record evidence in the light most favorable to Plaintiff, I must disagree.

**(1)     Materially Adverse Action**

An action is "materially adverse" if "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Hare, 220 F. App'x at 128 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). "Whether an action is materially adverse 'often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.'" Id. (quoting Burlington Northern, 548 U.S. at 69). "'[P]etty slights, minor annoyances, and simple lack of good manners,'" however, "are normally not sufficient to deter a reasonable person" from complaining to the EEOC. Id. (quoting Burlington Northern, 548 U.S. at 68).[9]

In her Complaint, Plaintiff characterizes her claim as one of retaliatory harassment. See

---

[9] Prior to Burlington Northern, the Court of Appeals for the Third Circuit defined adverse employment action as one that "alter[ed] the employee's compensation, terms, conditions, or privileges of employment, depriv[ed] him or her of employment opportunities, or adversely affect[ed] his or her status as an employee." Hare, 220 F. App'x at 127 n.4 (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997)). "The new standard 'protects an employee from a wider range of conduct' than the old one." Id. (quoting Phelan v. Cook County, 463 F.3d 773, 781 n.3 (7th Cir. 2006)); see also McKinnon v. Gonzales, 642 F. Supp. 2d 410, 426 (D.N.J. 2009).

10

Docket No. 1 ¶¶ 55, 59. The Court of Appeals for the Third Circuit first recognized the claim of retaliatory harassment in Jensen v. Potter, 435 F.3d 444 (3d Cir. 2006), abrogated in part by Burlington Northern, 548 U.S. 53, and further developed its contours in Moore and Hare. Because the claim is, at its roots, one of retaliation, the Burlington Northern "materially adverse" standard applies, and not the "severe and pervasive" hostile work environment standard required under Title VII's anti-discrimination provision. See Moore, 461 F.3d at 341-42; Hare, 220 F. App'x at 131-32. Thus, to prevail on a retaliatory harassment claim, the plaintiff must prove that the alleged harassment might well have dissuaded a reasonable worker from making or supporting a charge of discrimination. Hare, 220 F. App'x at 131-32 (citing Moore, 461 F.3d at 341). Because "it is often difficult to determine the motivations of an action," I must "concentrate not on individual incidents, but on the overall scenario." Id. at 132 (quoting Jensen, 435 F.3d at 450). Even if certain evidence is not very persuasive standing alone, the evidence when considered as a whole may be sufficient for a jury to reasonably find that the alleged adverse actions were motivated out of a retaliatory animus and created a hostile work environment. Id.

Here, Plaintiff identifies the following alleged adverse employment actions that occurred as a consequence of her initial EEOC filing:

– Captain Bell's handling of Plaintiff's November 11, 2006 confrontation with a fellow officer in the visiting room and the PDC hearing concerning the same.

– The indiscreet and embarrassing service of the PDC notice on Plaintiff in a public location – Shadyside Hospital – on October 1, 2007.

– The content and conduct of the PDC on October 3, 2007 concerning alleged harassing comments Plaintiff made to another employee. Among other things, Plaintiff cites Lieutenant Sullenberger's investigative report which she claims wrongfully included hearsay testimony from another hearing examiner questioning Plaintiff's credibility as well as information concerning prior discipline that should

have been removed from her file.

– Defendant's delay in providing Plaintiff with her workers' compensation paperwork until 35 days after she first called off work on November 3, 2007 due to stress related to the service of the PDC notice at Shadyside Hospital. Plaintiff states she was told that her workers' compensation claim was denied because she did not provide sufficient information and did not notify the Human Resources department of a work-related injury until December 7. She testified, however, that she called the HR Department on November 7 to ask what information she needed to submit. As a result of the denial of her claim, Plaintiff exhausted all of her leave time. Plaintiff cites evidence that her lack of leave time negatively impacted her opportunities for promotion[10] and resulted in denial of compensatory time and a fact-finding for leave abuse.

– Incidents involving inconsistent treatment or selective enforcement of policies, including the incident on October 21, 2007, when Plaintiff states that the acting shift commander informed her she was on her post without a hat and was out of uniform for that day. Plaintiff states that none of the other hatless officers in the yard got a similar call. Plaintiff also contends she was forced to complete paperwork and sign and modify documents that other officers were not. Further, Plaintiff testified that Captain Bell would intercept misconduct reports she prepared and drop or reduce the charges, thereby damaging Plaintiff's credibility.

– Captain Bell's negative attitude towards Plaintiff and negative comments Bell made to others, including Officer Mitteff, about Plaintiff and her job performance.

---

[10] Although Plaintiff has represented that she is not pursuing a failure to promote claim in this lawsuit, the jury may still consider the negative impact of an employment action on her opportunities for promotion as evidence that such action was "materially adverse."

See Docket No. 29 at 4-10. Although standing alone, some of Plaintiff's evidence may not be very persuasive or rise to the level of a "severe and pervasive" hostile work environment, when I consider it as a whole under the less demanding "materially adverse" standard, I find there is enough evidence from which a reasonable jury could find that Defendant's actions would deter a reasonable employee from exercising her rights.

### (2)  Causal Connection

To establish the third element of the *prima facie* case, Plaintiff must show a "causal connection" between her protected activity and the employer's alleged adverse actions. See Moore, 461 F.3d at 341-42; Hare, 220 F. App'x at 128. In assessing this prong, I may consider, *inter alia*, the "temporal proximity" between the protected activity and the alleged retaliatory conduct, and the "existence of a pattern of antagonism in the intervening period." Id. (quoting Jensen, 435 F.3d at 450). "Above all, however, 'each case must be considered with a careful eye to the specific facts and circumstances encountered.'" Id. (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 n.5 (3d Cir. 2000)).

As to the "causal connection" in this case, Defendant urges that the timing between Plaintiff's EEOC charge in 2004 and what it claims are the first complaints of retaliatory conduct in November 2006 are too attenuated to create an inference of causation. See Docket No. 26 at 9-10. Although this argument has some merit, it is not dispositive of the issue of causal connection. Although Plaintiff filed the EEOC charge at issue in 2004, the litigation that ultimately flowed from that charge did not conclude until February 2006, approximately nine months prior to the first alleged retaliatory actions. Moreover, although the gap between Plaintiff's protected activity and the alleged retaliatory actions in this case is insufficient in itself to create an inference of causation, see, e.g., LeBoon v. Lancaster Jewish Community Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007), it certainly does not foreclose such a conclusion. See Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 178 (3d Cir. 1997) ("It is important to emphasize that it is causation, not temporal

13

proximity itself, that is an element of plaintiff's *prima facie* case."); Woodson, 109 F.3d at 920 (The "mere passage of time is not legally conclusive proof against retaliation."); see also Moore, 461 F.3d at 342 ("The ultimate question in any retaliation case is an intent to retaliate *vel non*." (quoting Jensen, 435 F.3d at 449 n.2)). Viewing the totality of the evidence in the light most favorable to Plaintiff in this case, including, but not limited to, evidence pointing to inconsistencies in Defendant's proffered legitimate reasons[11] and evidence that Plaintiff was treated differently than other employees who had not engaged in protected activity, I cannot rule as a matter of law that a jury could not find a causal link between Plaintiff's protected activity and the adverse actions she alleges.

      b.    **<u>Articulated Non-Retaliatory Reasons and Pretext</u>**

Defendant argues that even if Plaintiff can establish a *prima facie* case of retaliation, her claim fails because Defendant has articulated legitimate, non-retaliatory reasons for its actions and there is no evidence from which a reasonable jury could conclude that those reasons are pretextual. I disagree.

In its supporting brief, Defendant articulates non-retaliatory reasons for the allegedly adverse actions at issue in this case. With respect to the November 11, 2006 altercation between Plaintiff and another officer and resulting PDC hearing and discipline, Defendant states that it disciplined Plaintiff because it investigated the incident and concluded that both officers had engaged in the misconduct alleged. Defendant further notes that both officers were disciplined, that both officers grieved their discipline, and that although the grievance committee reduced the amount of discipline, it upheld the decision that discipline was warranted. See Def.'s Br. Supp. at 10-12. Regarding the October 1, 2007 service of the PDC notice, Defendant cites Soltis's

---

[11] For example, with respect to the service of the PDC notice on Plaintiff at Shadyside Hospital, Soltis testified that such service was not abnormal while Berberick testified that he had never served another PDC notice outside of the prison facility in thirteen years. See LeBoon, 503 F.3d at 232-33 (inconsistencies in employer's articulated reasons can be evidence of a causal link).

14

testimony that the service of the PDC notice at the hospital was not abnormal and that Defendant was merely ensuring it provided Plaintiff with the requisite 48 hours notice prior to the commencement of the PDC conference. Id. at 14. Defendant also lists justifications for many of its other allegedly retaliatory actions, including interception of misconduct reports (no reports were intercepted and video evidence contradicts content of Plaintiff's report); forcing Plaintiff to sign and modify documents not required of other officers (requirements were standard procedure); discipline for not wearing a hat (Plaintiff was not disciplined); and leave abuse (plaintiff took leave when she did not have it available). Id. at 15-19.

Assuming the above explanations satisfy Defendant's relatively light burden of proffering legitimate, non-retaliatory reasons for its actions, I find that based on the record evidence discussed at length above, including, *inter alia*, both Plaintiff's and Mitteff's testimony, a fact finder could reasonably disbelieve those articulated reasons and reasonably believe that retaliatory animus motivated those actions. Because Plaintiff has shown genuine issues of material fact as to whether she suffered retaliation in violation of Title VII and the PHRA, Defendant's motion for summary judgment is denied.

### C. Plaintiff's Motion for Summary Judgment

Plaintiff filed a cross-motion for summary judgment arguing that she has established a *prima facie* case of retaliation as a matter of law and, therefore, she is entitled to summary judgment in her favor. Plaintiff's motion is without merit.

As set forth above, there are genuine issues of material fact as to whether Defendant took any materially adverse actions against Plaintiff and whether there was a causal connection between any such adverse actions and Plaintiff's protected activity. Although I held in denying Defendant's motion for summary judgment that a reasonable juror could find that Plaintiff has established a *prima facie* case, the jury could just as reasonably reach the opposite conclusion when viewing the facts in the light most favorable to Defendant (as I must when deciding Plaintiff's motion). Further,

even if Plaintiff could establish a *prima facie* case as a matter of law, she does not even address let alone argue that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law as to the legitimate non-retaliatory reason or pretext prongs of the *McDonnell Douglas* burden-shifting analysis.

Accordingly, Plaintiff is not entitled to summary judgment on her claims.

### III. CONCLUSION

For all of the above reasons, Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment are denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Tonka M. Crosby, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 08-1506 |
| ) | |
| State Correctional Institute Greensburg, ) | |
| ) | |
| Defendant. ) | |
| ) | |

AMBROSE, District Judge

## **ORDER OF COURT**

AND NOW, this 19th day of July, 2010, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendant's Motion for Summary Judgment (Docket No. 25) and Plaintiff's Motion for Summary Judgment (Docket No. 28) are denied.

The parties are ordered to appear for a Status Conference on July 28, 2010 at 10:30 a.m.

BY THE COURT:
/s/ Donetta W. Ambrose
Donetta W. Ambrose
U.S. District Judge